IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **CHERION PRICE, on behalf of her minor son, J.C.,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:24-CV-1387-L** |
| | § | |
| **IESAH WHITE; ANTONIO BRITTON; GUADALUPE FRIAS; and MARK SHARROCK,** | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

On December 13, 2024, the Findings, Conclusions and Recommendation of the United States Magistrate Judge ("Report") (Doc. 17) was entered, recommending that the court deny Defendants' Motion to Dismiss Plaintiff's Original Complaint ("Motion to Dismiss") (Doc. 6), filed July 8, 2024, in which Defendants seek dismissal of Plaintiff's excessive force and unlawful detention claims based on qualified immunity. For the reasons herein explained, the court has concerns regarding the objections raised by Defendants to the Report and **recommits** this matter and Defendants' Motion to Dismiss to the magistrate judge for further consideration and issuance of amended or supplemental findings, conclusions, and recommendations in light of the legal authority that issued after the Report and the court's observations in this order.

In support of his recommendation, the magistrate judge determined that the incident report should not be considered in ruling on the Motion to Dismiss because, although some portions of the incident report are referenced in Plaintiff's pleadings, the incident report is not necessary to prove Plaintiff's claims, and Plaintiff's pleadings dispute the statements in the incident report regarding J.C.'s possession of a gun, which is a material issue. The magistrate judge further

**Memorandum Opinion and Order – Page 1**

determined that Defendants are not entitled to dismissal of Plaintiff's unlawful detention claim based on qualified immunity because Plaintiff alleges that there was no justification for J.C.'s further detention (*Terry* stop)[1] after he told Defendants he did not possess a gun and Defendants confirmed this, and J.C.'s continued detention was unreasonable and violated his Fourth Amendment rights, as there was no additional reasonable suspicion to justify prolonging his detention. In addition, the magistrate recommends that the court deny the Motion to Dismiss based on qualified immunity with respect to Plaintiff's excessive force claim because:

> Considering the allegations of the complaint, set out above, and these established standards, the undersigned finds that [Plaintiff] has "plead[ed] specific facts that both allow" for "the reasonable inference that," by tasing or drive stunning J.C. almost immediately after he was tackled to the ground and held there, with his hands visible, where he was neither threatening [Defendants] nor attempting to flee, [Defendants] Frias and Sharrock violated the Fourth Amendment "and that defeat[ed] [their associated] qualified immunity defense with equal specificity."

Report 37 (quoting *Allen v. Hays*, 65 F.4th 736, 744 (5th Cir. 2023)).[2] Defendants filed objections to the Report (Doc. 11), to which Plaintiff filed a response. Thereafter, Defendants filed a reply (Doc. 13).[3]

In their objections (Doc. 11), Defendants contend that: (1) the magistrate judge erred in not considering the incident report in ruling on their Motion to Dismiss; (2) Plaintiff has not sufficiently pleaded facts that, if proved, would show that the *Terry* stop of J.C. lasted longer than necessary; and (3) Plaintiff's pleadings fail to allege more than a de minimus injury occurred as a

---

[1] *See Terry v. Ohio*, 392 U.S. 1, 9 (1968).

[2] In reaching this conclusion, the magistrate judge also considered other Fifth Circuit cases involving tasers. *See* Report 35-38.

[3] Defendants' reply (Doc. 13) was filed in violation of Local Civil Rule 72.2, the court's Order (Doc. 8), and Federal Rule of Civil Procedure 72(b)(2), which do not permit a party to file a reply to another party's response to objections. Defendants also filed their reply without first seeking and obtaining leave of court as required by this district's Local Civil Rules and the undersigned's Order of Reference (Doc. 8). *Id.*

**Memorandum Opinion and Order – Page 2**

result of Defendant Sharrock's tasing. In addition, they disagree with the magistrate judge's determination that Plaintiff has plausibly alleged that the tasing and "drive stunning" of J.C. was excessive. Doc. 11 at 8. They contend, based in part on the incident report, that their conduct was objectively reasonable under the circumstances, and that "the law is not clearly established whether J.C.'s resistance, as pleaded, constituted active resistance" justifying their conduct.

The court questions the correctness of these objections by Defendants for essentially the reasons set forth in the Report, and it elaborates on one of these objections. Regarding the length of the *Terry* stop, the magistrate judge focused on Plaintiff's allegation that "it was unreasonable to detain J.C. once it was dispelled that he was not in possession of the gun and whe[n] no additional reasonable suspicion justified an extension of [his] detention." Report 30. In their objections, Defendants assert that J.C.'s continued detention was justified, even after confirming that he was not currently in possession of the gun, because: (1) they had reasonable suspicion that he previously possessed the gun before his brother[4] was seen leaving the pool with it; and (2) they also had reasonable suspicion that he knew where the gun was located and, therefore, extended their investigation and J.C.'s detention to take him home to discover the location of the gun and/or his brother who had been seen with the gun:

> Defendants Britton and White had reasonable suspicion that J.C., a juvenile, had possessed a handgun at the neighborhood pool. They also had reasonable suspicion that J.C. knew the whereabouts of the gun since his "brother" had possibly left the pool with the gun.
> . . . .
> Defendants Britton and White had additional articulable, reasonable suspicion. They were intending to extend the investigation for the brief purpose of taking J.C. home to discover the whereabouts of the gun that J.C.'s "brother" had left the pool with. Doc. 6-1, at 7. Defendants Britton and White informed J.C. "he was being

---

[4] In the Complaint, Plaintiff explains that, although he used the term "brother" when responding to Defendants' questions, he used this term to mean that this was a "close friend." Pl.'s Compl. 2, ¶ 42 & n.2. It is apparent from Plaintiff's pleadings, though, that Defendants took this to mean that the young man who left the scene was J.C.'s actual brother and an immediate family member. *See id.* ¶¶ 28-30, 61, 66, 68, 114.

**Memorandum Opinion and Order – Page 3**

detained and request[ed] that he place his hands behind his back." Doc. 1, at ¶73.
This is reasonably related to the scope of the circumstances which justified the
interference in the first place.

Defs.' Obj. 4-5 (Doc. 11).

Defendants, however, acknowledge that the first part of this argument directly conflicts with Plaintiff's allegation that "J.C. never had a gun." Defs.' Obj. 2. As correctly noted by the magistrate judge, the court must construe this allegation in Plaintiff's Complaint and other allegations, including the allegation—that "**J.C. informed [security guard Shana] Cowen he did not have a gun**, showed Cowen his belongings, and after checking them and confirming he did not have a gun Cowen told him he was good to go"—true and in the light most favorable to Plaintiff. Report 11 (quoting Pl.'s Compl. ¶ 10) (emphasis added); *see also* Pl.'s Compl. ¶¶ 68-69 ("[D]espite having information that J.C. had not committed any crimes as he did not have a gun and was not described by witnesses as being the person with a gun, Defendant Frias instructed Defendants Britton and White to detain J.C.").

Defendants nevertheless argue that the magistrate judge erred in not considering the incident report. According to Defendants, this report allegedly supports their argument that they had reasonable suspicion to believe that J.C. possessed the gun at issue before they arrived at the scene based on what the security guard allegedly told them:

> Plaintiff omits from the incident report that when "Deputies made contact with [Shana Cowen] the pool security guard  . . . **[the security guard had] confirmed with the male, later identified as [J.C.] that he did have a gun** and advised [J.C.] that no guns were allowed at the property." Doc. 6-1, at 4. Thus, "as to these material facts, there is a genuine conflict between the allegations and what the incident report states." Doc. 10, at 17. What the security guard told officers is central to Plaintiff's claim. It establishes that the Defendants had reasonable suspicion to continue the detention of J.C. The Recommendation's conclusion that a video of an officer speaking with the pool's security guard should be admitted, but the after-the-fact incident report should not be admitted is incorrect. Plaintiff has incorporated the incident report into her pleadings and, therefore, the whole incident report should be admitted. Defendants object to the recommendation to disregard the parts of the incident report not referenced in Plaintiff's complaint.

Defs.' Obj. 2-3 (emphasis added).

Although Plaintiff references the incident report in the Complaint, the court agrees with the magistrate judge that the incident report is not central to Plaintiff's claims.  Instead, the incident report is much more central to Defendants' defenses.  *See Scanlan v. Texas A&M Univ.*, 343 F.3d 533, 636-37 (5th Cir. 2003) (discussing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)).  In *Scanlan*, the Fifth Circuit concluded that the district court erred in considering a report referenced in the plaintiffs' pleadings because the plaintiffs did not accept the report that was created by the defendants, and, while insightful, the report was not central to the plaintiffs' claims; rather, it was "much more central" to the defendant's defenses.

Likewise, the incident report here was created by one of the Defendants, specifically Defendant White, and Plaintiff disputes the portion(s) of the incident report relied on by Defendants.  *See Scanlan*, 343 F.3d at 537 (noting that the report relied on by the defendants in support of their motion to dismiss was "essentially a defendant-created report," the contents of which were not accepted as true by the plaintiffs).  The magistrate judge, therefore, correctly determined that, at the pleadings stage, the court applies a different standard to the contents of an after-the-fact police incident report that are rejected by the plaintiff's pleadings than it would to

**Memorandum Opinion and Order – Page 5**

evidence such as a video that captured the incident at the time.  Report 20 (quoting *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 & n.9 (5th Cir. 2018) (Peña's "characterization"—"that she was not suspected of any crime when she fled"—"is belied by the police reports [incorporated into her complaint], but on a motion to dismiss, Peña's well-pleaded factual allegations enjoy a presumption of truth" where the "complaint expressly rejects those elements of the police report that conflict with her account. Hence, for purposes of Rule 12(b)(6), we presume only that the officers made the assertions contained in the report, not that those assertions are in fact truthful.") (citations omitted).

Thus, although Defendants attached the incident report to their Motion to Dismiss, consideration of the report is not appropriate here in resolving their Motion to Dismiss under Rule 12(b)(6) because it is not the equivalent of a video, and the court must construe the factual allegations in Plaintiff's Complaint as true and in the light most favorable to Plaintiff.  *See id.*; *see also Scanlan*, 343 F.3d at 537 ("[T]he district court's first error was going outside the plaintiffs' complaints and considering the Final Report.  Even if the Final Report fell under the *Collins* exception, the district court failed to construe the plaintiffs' factual allegations in the light most favorable to the plaintiffs."). The court also notes that a majority of the cases relied on by Defendants involved summary judgment motions, not motions to dismiss, and are, therefore, distinguishable because a different standard applies at the summary judgment stage of litigation. Additionally, Defendants have not requested that their Motion to Dismiss be converted into one for summary judgment, and the court would have declined any such request even if it had been made.

Thus, this leaves only Defendants' argument that J.C.'s continued detention was justified for purposes of their conducting an investigation regarding the brother's possession of a firearm,

**Memorandum Opinion and Order – Page 6**

using J.C. as a witness to obtain information regarding the whereabouts of the brother and/or the gun. Even assuming that J.C.'s continued detention was appropriate for this purpose, Defendants offer no legal authority that would justify J.C.'s *continued Terry detention that involved transporting him (a minor) to another location*, whether to his home or anywhere else under the circumstances, and the court was unable to find any Fifth Circuit or Supreme Court authority that would warrant J.C.'s continued detention for this purpose *absent probable cause that he had committed a crime.*

In *Dunaway v. New York*, the Supreme Court explained that, because of the limited nature of the intrusion, brief investigative *Terry* stops of less than a minute that involve, for example, random checks for drivers' licenses or briefly questioning a driver and passengers regarding suspicious circumstances, fall within *Terry*'s narrow intrusions that do not demand the probable cause required for an arrest, but "any further detention or search must be based on consent or probable cause." 442 U.S. 200, 211 (1979). Although the Supreme Court has not adopted a time limitation for a permissible *Terry* stop, courts have held that investigative detentions involving the transportation of a suspect to another location require more than reasonable suspicion, that is, probable cause or consent. *See id.* at 207 (concluding that Dunaway was "seized" without probable cause and taken involuntarily to the police station for questioning regarding an informant's lead implicating him in a robbery/murder); *United States v. Place*, 462 U.S. 696, 709-10 (1983) (concluding that the detention of a suspect's luggage that was seized for ninety minutes and transported to another location for a dog sniff went beyond the narrow authority possessed by police to detain briefly luggage reasonably suspected to contain narcotics); *United States v. Baker*, 203 F.3d 827, 1999 WL 1234383, at *3 (5th Cir. 1999) (concluding that, although the length of the detention was unclear, "the facts in the present case are clearer than the facts in *Place*, as both

**Memorandum Opinion and Order – Page 7**

Baker and his luggage were detained for transport to another location where a dog sniff could be conducted."). Thus, Defendants assertion that they had reasonable suspicion, without more, to extend their investigation and J.C.'s detention to take him home in an effort to discover the location of the gun and/or his brother is insufficient.

Defendants cite cases in their Motion to Dismiss, arguing that much longer detentions of several hours have been upheld, but these cases are distinguishable for the reasons noted in Plaintiff's response, and two of the cases are from another circuit. For example, Defendants point to *Illinois v. McArthur*, 531 U.S. 326, 332 (2001), for the conclusion that a "two-hour detention while officers obtained a search warrant for a trailer [was found to be] reasonable [and upheld because] . . . the 'time period was no longer than reasonably necessary for the police, acting with due diligence, to obtain the warrant.'" Defs.' Mot. 9-10. As Plaintiff correctly notes, the detention in this case was upheld because the officers had *probable cause* to believe that the suspect had illegal drugs in his home. *McArthur*, 531 U.S. at 331-32. It is, therefore, distinguishable and does not support Defendants' assertion that reasonable suspicion justified their further detention of J.C. for the investigative purpose identified by them that involved transporting him (a minor) to another location. Accordingly, accepting the allegations in Plaintiff's Complaint as true and viewing the facts as pleaded in the light most favorable to Plaintiff, the court questions the viability of this and the other objections asserted by Defendants for the reasons explained.

Further, after issuance of the Report, the Supreme Court held that courts must consider the "totality of the circumstances," including "all relevant circumstances . . . facts, and events leading up to the climactic moment" in assessing the reasonableness of an officer's actions and ruling on a qualified immunity defense to a Fourth Amendment excessive force claim. *Baker v. Coborn*, 170 F.4th 988, 994 (5th Cir. 2026) (quoting *Barnes v. Felix*, 605 U.S. 73, 80 (2025)). The Court in

Memorandum Opinion and Order – Page 8

*Baker* explained that "the 'totality of the circumstances' inquiry into a use of force has no time limit." *Barnes*, 605 U.S. at 80.  The Court nevertheless recognized that "the situation at the precise time of the shooting will often be what matters most; it is, after all, the officer's choice in that moment that is under review." *Ramirez v. Granado*, 163 F.4th 204, 209 (5th Cir. 2025) (quoting *Barnes*, 605 U.S. at 80).

Accordingly, rather than rule on the magistrate judge's recommendation and Defendants' objections to the Report at this time, the court **recommits** this matter and Defendants' Motion to Dismiss to the magistrate judge for further consideration and issuance of amended or supplemental findings, conclusions, and recommendations he deems necessary in light of the legal authority that issued after the Report, the effect if any of such authority on this case and Defendants' Motion to Dismiss, and the court's observations in this order.

As the court has had sufficient initial briefing on this matter, it places a **ten-page limit** (exclusive of signature and certificate of service pages) on any objections, or responses by any party, to the amended or supplemental Report of the magistrate judge. Further, any objections filed by the parties must not rehash previously urged arguments. No reply may be filed by any party without leave of court. **Any reply brief filed without leave of court will be summarily stricken.**

**It is so ordered** this 5th day of June, 2026.

Sam A. Lindsay
United States District Judge

**Memorandum Opinion and Order – Page 9**